UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | | |
|---|---|---|
| COURTENY E. BALTIMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 15-CV-1-HRW |
| v. | ) | |
| | ) | |
| TAMMY COOPER, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Courtney E. Baltimore is an inmate confined by the Kentucky Department of
Corrections ("KDOC") in the Eastern Kentucky Correctional Complex ("EKCC")
located in West Liberty, Kentucky.  Proceeding without counsel, Baltimore has
filed a 42 U.S.C. § 1983 civil rights complaint against five defendants, all officials
of the EKCC,[1] alleging violations of his federal constitutional rights.  Baltimore
alleges that the EKCC defendants have allowed funds to be deducted from his
inmate account and remitted to the Kentucky Crime Victims' Compensation Board
("KCVCB"), a subdivision of the Kentucky Public Protection Cabinet.  Baltimore
alleges that the defendants' actions violate his rights to due process and equal

---

[1]  The named defendants are:  (1) Tammy Cooper, Inmate Account Custodian; (2) Mike
McKinney, Inmate Account Custodian; (3) Zach Patton, Inmate Account Custodian; (4) "T."
Guyn, Inmate Account Custodian; and (5) Phyllis Osborne, Correctional Officer.

protection of the law guaranteed by the Fourteenth Amendment of the U.S. Constitution; his rights guaranteed by the Sixth Amendment of the U.S. Constitution; and his rights granted under state law and the Kentucky Constitution. By separate Order, Baltimore has been granted pauper status. [D. E. No. 4]

The Court has conducted a preliminary review of Baltimore's complaint because he asserts claims against government officials and because he has been granted pauper status. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. Because Baltimore is proceeding without an attorney, the Court liberally construes his claims and accepts his factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). But as explained below, the Court determines that Baltimore has not alleged a violation of his federal constitutional rights.

## ALLEGATIONS OF THE COMPLAINT

A Jefferson Circuit Court jury convicted Baltimore of homicide, and on July 27, 2012, Baltimore received a 33-year prison sentence. On appeal, Baltimore's conviction was affirmed. *Baltimore v. Commonwealth*, No. 2012-SC-000522, 2013 WL 6730040 (Ky. Dec. 19, 2013) With good time credits, Baltimore's

projected release date is May 20, 2042, although he will be eligible for parole on October 3, 2030.[2]

On October 13, 2013, while Baltimore was confined in the Roederer Correctional Complex located in LaGrange, Kentucky, the KCVCB notified him by letter that it was taking action to collect $5,000.00 representing medical expenses it had paid to or on behalf of the victim of his crime; that under KRS 346.180(1), Baltimore was indebted to the Commonwealth of Kentucky for that amount; and that the KCVCB is authorized to collect that amount by his prison wages until the $5,000.00 sum was paid in full.  [D. E. No. 1-1, pp. 8-9]

Baltimore alleges that on August 25, 2014, after his transfer to the EKCC, he asked EKCC Correctional Officer Defendant Phyllis Osborne to process a theft report because $30.00 had been attached from his inmate account without his permission, but that Osborne denied his request.  [D. E. No. 1, p. 2, § III] Baltimore states that between August 2014 and January 20, 2015, the EKCC defendants have deducted $548.00 from his inmate account and remitted it to the KCVCB, and that they continue deduct and remit 50% of his incoming funds to the KCVCB.  [*Id.*, pp. 2-3]

---

[2] *See* http://kool.corrections.ky.gov/?sortOrder=Last%20Name%2C%20First%20Name lastName=baltimore&firstName=courtney&searchAliases (last visited on February 2, 2015).

Baltimore objected to the attachment of his inmate funds at the EKCC by pursuing the KDOC's four-step administrative grievance process. On September 16, 2014, Defendant Mike McKinney, the EKCC Grievance Aide, denied Baltimore's initial grievance, stating that on November 27, 2013, the KCVCB had entered an order requiring Baltimore to pay $5,000.00 in restitution, and that Baltimore would be responsible for paying restitution until the amount was paid in full. [D. E. No. 1-1, p. 4 ("Informal Resolution Stage")][3]

Baltimore unsuccessfully appealed to the EKCC Grievance Committee, which agreed with McKinney's response. [*Id.*, p. 7 ("Grievance Committee")] Baltimore then appealed to the EKCC Warden, who denied Baltimore's appeal and agreed with McKinney and the Grievance Committee. [*Id.*, ("Warden's Review")] Baltimore then appealed to LaDonna Thompson, Commissioner of the KDOC, who denied his appeal on October 27, 2014. [*Id.*, p. 1] Thompson explained that the KCVCB has the statutory authority to order restitution for crime victims; that the KCVCB had notified Baltimore by letter dated October 7, 2013, that he owed $5,000.00 in restitution and that it would be collecting that amount under KRS §

---

[3] The Court takes judicial notice of the fact that on November 27, 2013, the KCVCB sent a "Notice of Intercept," to Roederer Correctional Complex, informing that facility that Baltimore owed the Commonwealth of Kentucky a $5,000.00 debt, and instructing it to deduct money from regular earnings deposited into Baltimore's inmate account and remit the same to the KCVCB under the authority of KRS § 44.030(1).

346.180(1); and that the EKCC had been properly deducting 50% of all funds he received, and would continue to do so, until the $5,000.00 was re-paid. [*Id.*]

Baltimore contends that the attachment of funds from his inmate was "arbitrarily imposed," *see* D. E. No. 1, p. 4; that the deduction and transmission of his money to the KCVCB amounts to theft; and that that removal of funds from his inmate account and payment of same to the KCVCB violates KRS § 532.033(1) and unspecified provisions of the Kentucky Constitution.[4]  Baltimore asserts that the attachment is illegal under state law because his July 26, 2012, criminal judgment from the Jefferson Circuit Court made no mention of any financial liability or obligation on his part.   He therefore *appears* to be claiming if a defendant has been sentenced to serve a prison term, he cannot also be liable for any form restitution, including a financial obligation to the KCVCB.

Baltimore alleges that the defendants have violated his right to due process of law and equal protection, both of which are guaranteed by the Fourteenth

---

[4] KRS 532.033, **Order of restitution**, provides as follows:

When a judge orders restitution, the judge shall:

(1) Order the restitution to be paid to a specific person or organization through the circuit clerk, who shall disburse the moneys as ordered by the court;
(2) Be responsible for overseeing the collection of restitution;
(3) Set the amount of restitution to be paid;
(4) Set the amount and frequency of each restitution payment or require the payment to be made in a lump sum;
(5) Monitor the payment of the restitution to assure that payment is being made;
(6) If restitution is not being paid as ordered, hold a hearing to determine why the restitution is not being paid;
(7) If the restitution is not being paid and no good reason exists therefor, institute sanctions against the defendant; and
(8) Not release the defendant from probation supervision until restitution has been paid in full and all other aspects of the probation order have been successfully completed.

Amendment of the U.S. Constitution; his rights guaranteed under the Sixth Amendment of the U.S. Constitution; and his rights guaranteed under the Kentucky Constitution. Baltimore seeks an order directing the EKCC to reimburse all funds attached from his inmate account and punitive damages in the amount of $8,000.00. [*Id.*, p. 8]

## DISCUSSION

The Court determines that the EKCC defendants have not violated Baltimore's constitutional right to due process of law. As stated in KRS § 346.010, the purpose of the Compensation of Crime Victims Act is to indemnify those needy victims of criminal acts who have suffered bodily injury or death as a result. The state compensates those victims or their dependents who incur financial hardships and may become dependent upon public welfare. *Id.*

In its letter dated October 7, 2013, the KCVCB clearly notified Baltimore that it had paid $5,000.00 benefits to or on behalf of the victim of his crime, and that it would be collecting that sum of money from him through an interception of the monies deposited in his KDOC inmate account. The KCVCB correctly cited to KRS § 346.180(1) as authority for its collection action against Baltimore. That statute states in relevant part, "Any payment of benefits to or on behalf of a victim under this chapter creates a debt due and owing to the state by any person found to

have committed such criminal act in either a civil or criminal court proceeding in which he is a party." *See* KRS § 346.180(1). Thus, to the extent that the KCVCB paid benefits to or on behalf of the victim of Baltimore's crime, the Commonwealth of Kentucky became, and currently is, a creditor of Baltimore.

The KDOC has implemented policies and procedures ("CPP") governing deductions made from inmate accounts. The applicable CPP is found in CPP 15.7, *Inmate Account*s., which states as follows in relevant part:

CPP 15.7, § II (C)
**Court Ordered Restitution**

Court ordered restitution shall be deducted from an inmate's account as determined by court order. If the court order directs the institution to collect victim restitution from an inmate, the institution shall collect the money and forward it to the court for disbursement to the victim and their survivors or as dictated by the order. Any Court order for the institution to collect monies or restitution from an inmate shall take precedence over institutional debts or restitution.

CPP 15.7, § II (D)
**Payment of Restitution or Debts**

1. If an inmate owes the institution money or restitution, incoming funds to the inmate's account shall be applied to outstanding debts or freezes.

2. The percent frozen shall be in the discretion of the warden or his designee, but shall not exceed fifty (50) percent if an inmate receives one hundred (100) dollars or less in incoming funds.

3. If an inmate receives more than one hundred (100) dollars, the institution shall fully apply the amount of incoming funds over one hundred (100) dollars to the restitution or debt. The institution may

7

then apply up to fifty (50) percent of the remaining one hundred (100) dollars to the restitution or debt.

In its letter dated October 7, 2013, the KCVCB clearly notified Baltimore that it had paid medical benefits to or on behalf of the victim of his crime in the amount of $5,000.00, and that it would be collecting that sum of money from him through an interception of the monies deposited in his KDOC inmate account. The KCVCB correctly cited to KRS § 346.180(1) as authority for its collection action against Baltimore. That statute states, in relevant part, "Any payment of benefits to or on behalf of a victim under this chapter creates a debt due and owing to the state by any person found to have committed such criminal act in either a civil or criminal court proceeding in which he is a party." KRS § 346.180(1); *see also* KRS § 44.030 (1) ("No money shall be paid to any person on a claim against the state in his or her own right, or as an assignee of another, when the person or the person's assignor is indebted to the state or any local government.").

Baltimore clearly has a liberty interest in the funds held in his inmate account, *see Dalton v. Haney*, No. 2013-CA-000172-MR, 2014 WL 891026, at *3 (Ky. App. Mar. 7, 2004), but he received all of the due process to which he was entitled with respect to deductions from that account when he pursued, albeit unsuccessfully, the KDOC's administrative remedy process. The EKCC staff complied with CPP 15.7 by deducting 50% of funds deposited into Baltimore's

8

account which exceeded $100.00, and remitting those funds to the KCVCB. Again, Baltimore's financial obligation to the KCVCB is a "debt," the re-payment of which is authorized by KRS § 346.180(1) and, as to the specific attachment procedures, CPP 15.7 § II (C) and (D).

Baltimore next contends that the EKCC defendants have violated his rights under the Sixth Amendment of the U.S. Constitution, but Baltimore did not develop this argument at all. Because the Court is essentially required to speculate about the basis of that argument, the claim fails to state a claim upon which relief can be granted. In order to state a claim sufficient to survive screening, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, n. 3 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a court need not accept threadbare recitals of the elements of a cause of action supported by conclusory statements); *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) (stating conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim).

Broadly assuming that Baltimore is claiming that he was entitled to a jury trial regarding the KCVCB's actions in collecting $5,000.00 from him by attaching his inmate account, that construed argument fails because it ignores the fact that Baltimore was a defendant in a criminal proceeding in the Jefferson Circuit Court,

where his guilt as to the homicide charge was *in fact* adjudicated by a jury, in compliance with his Sixth Amendment right. The KCVCB is not subjecting Baltimore to imprisonment; it is merely collecting financial reimbursement from him through legal statutory measures and the KDOC's applicable regulation.

Baltimore next broadly alleges that the defendants have violated his right to equal protection of the law. The Equal Protection Clause provides that 'all persons similarly situated should be treated alike.'" *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Under the Equal Protection Clause, the government is prohibited from engaging in discrimination that: (1) burdens a fundamental right; (2) targets a suspect class;[5] or (3) "intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Commis*, 430 F.3d 783, 788 (6th Cir. 2005) (citation omitted).

The third prong, commonly known as a "class-of-one theory," requires a plaintiff to prove that he was intentionally treated differently from other similarly situated individuals without a rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A plaintiff establishes that

---

[5] Prisoners are not a "protected class" for equal protection purposes. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 441 n. 1 (6th Cir. 2008) (noting that, "to the extent [the plaintiff] advance[d] an equal protection argument under the Fourteenth Amendment," such claim failed because the plaintiff "failed to allege or identify his membership in a protected class," and prisoners were not a "protected class" for equal-protection purposes).

government action lacks a rational basis "either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *TriHealth, Inc.*, 430 F.3d at 788 (citation omitted).

Assuming without deciding that Baltimore has a fundamental right to the funds in his inmate account, Baltimore does not, however, allege either that the defendant's alleged actions target a suspect class, or that other similarly situated EKCC prisoners are being treated differently than him with regard to deductions from their inmate accounts. Conclusory allegations of unconstitutional conduct are insufficient to state a claim under § 1983; some factual basis for the claim must be set forth in the pleadings. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (citation omitted). Thus, Baltimore's Fourteenth Amendment equal protection claim fails to state a claim upon which relief can be granted.

Because the Court has concluded that Baltimore has failed to state a federal claim upon which relief can be granted under 42 U.S.C. § 1983, the Court declines to exercise jurisdiction over Baltimore's pendant state law claim that his rights under KRS § 532.033 and/or the Kentucky Constitution have been violated. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Washington v. Starke*,

11

855 F.2d 346, 351 (6th Cir. 1988) ("It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendant state law claims should be dismissed.").

If Baltimore contends that the KCVCB's collection activities violate state statute land/or provisions of the Kentucky Constitution, he is free to file a motion in his Jefferson Circuit criminal proceeding objecting to the KCVCB's assessment and collection activity. The Court takes no position on the validity of such action; in fact, nothing in Kentucky law precludes a defendant from being both incarcerated **and** required to pay restitution. *Metcalf v. Commonwealth*, No. 2008-CA-002381, 2009 WL 3151140, at *2 (Ky. App. Oct. 2, 2009); *Commonwealth v. O'Bryan*, 97 S.W.3d 454, 457 (Ky. App. Feb. 14, 2003) ("...we discern no conflict which would preclude restitution from being ordered by the trial court when a defendant is also ordered to serve a term of imprisonment.")  Baltimore may also file a civil action in state court if he so chooses, although this Court also takes no position on the validity of such an action.

For these reasons, the federal claims Baltimore asserts in his § 1983 complaint fail to state a claim upon which relief can be granted.  His complaint will be dismissed and Judgment will be entered in favor of the defendants.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)    Plaintiff Courtney Baltimore's 42 U.S.C. § 1983 claims arising under the Sixth and Fourteenth Amendments of the U.S. Constitution are **DISMISSED WITH PREJUDICE.**

(2)    Baltimore's claims alleging violations of state law, and/or the Kentucky Constitution, are **DISMISSED WITHOUT PREJUDICE** to Baltimore's right to assert those claims in state court.

(2)    Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This February 24, 2015.



Signed By:
*Henry R. Wilholt, Jr.*
**United States District Judge**

13